IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| Auvesy GmbH & Co. KG, | ) |
|       Plaintiff, | ) |
|       vs. | ) Civil Action No. |
| Rockwell Automation, Inc. and Rockwell Automation Technologies, Inc., | ) |
|       Defendants. | ) |

## COMPLAINT

Plaintiff Auvesy GmbH and Co. KG, by its attorneys, and for its complaint, states as follows:

## THE PARTIES

1. Plaintiff Auvesy GmbH and Co. KG ("Auvesy") is a corporation organized under the laws of Germany, having a place of business at Fichtenstraße 38b, D-76829 Landau Germany.

2. Upon information and belief, Defendant Rockwell Automation, Inc. ("Rockwell Automation") is a citizen of Delaware and Wisconsin. It is a Delaware Corporation with its principal place of business at 1201 South 2nd Street, Milwaukee, Wisconsin 53204-2410.

3. Upon information and belief, Defendant Rockwell Automation Technologies, Inc. ("Rockwell Automation Technologies") is a citizen of Ohio. It is an Ohio corporation with its principal place of business at 1 Allen Bradley Drive, Mayfield Heights, Ohio 44124.

## THE NATURE OF THE ACTION

4. This action arises out of Rockwell's false claim before the United States Patent and Trademark Office ("USPTO") that Rockwell Automation Technologies is the assignee of an invention claimed in U.S. Patent Nos. 8,065,666 (the "'666 patent") and 8,584,096 (the "'096 patent"), each entitled "Change Management Methodologies For Industrial Automation and Information Systems" (the "Invention") (copies of the patents are attached, respectively, as Exhibits A and B). Plaintiff Auvesy seeks a declaration that, among other things, (1) it is a joint owner of at least an undivided interest in the Invention, (2) neither Defendant Rockwell Automation, Inc. nor Defendant Rockwell Automation Technologies, Inc. (together "Rockwell") is the owner of the '666 or '096 patents, and (3) no product made by Auvesy infringes or could infringe any claim of the '666 or '096 patents. Auvesy also seeks actual and punitive damages.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction under 28 U.S.C. § 1332, in that this action is between a citizen of a state and a citizen or subject of a foreign state and the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs. This Court also has federal question jurisdiction under 28 U.S.C. § 1338 because it arises under an Act of Congress relating to patents.

6. Venue lies in this District under 28 U.S.C. § 1391(a) and (c) in that, on information and belief, defendant Rockwell Automation resides in this District and a substantial amount of the events and activities giving rise to this action occurred in this District.

## FACTS

7. Werner Schnaebele ("Schnaebele") is an individual residing in Appenhofener Str. 8, Landau Germany 76829 and is a citizen of Germany.

8. In 1996, Schnaebele was employed by Gesellschaft für Prozessautomation und PC-Anwendungen mbH ("GEPA"), which was a company organized under the laws of Germany and located in Germany.

9. Upon information and belief, Günter Schunck ("Schunck"), a German citizen, was the owner and President of GEPA from 1996 until approximately shortly after GEPA was sold to Propack Data GmbH in 2006.

10. Mr. Schnaebele signed a first employment contract with GEPA on or about June 28, 1996. ("First Employment Contract").

11. The First Employment Contract had no provision regarding ownership of inventions conceived by an employee. However, because the First Employment Contract was between a German Citizen, Schnaebele, and a German company, GEPA, the provisions of the Gesetz über Arbeitnehmererfindungen ("German Employee Inventions Act") apply to that contract.

12. In or about 1998, Schnaebele and Schunck began development of an application relating to industrial automation. The first version of that application, called "AG Batch," was released and delivered to customers in 1999. Subsequently, it was called "VersionWorks."

13. Schnaebele and Schunck continued to work on improvements to VersionWorks at least until 2006.

14. Upon information and belief, in or about 2006, Schunck negotiated a sale of GEPA to Propack Data GmbH.

15. At or around the same time, Schnaebele signed a second employment agreement with GEPA ("Second Employment Agreement").

3

16. The Second Employment Agreement stated that the German Employee Invention Act governs the ownership of any inventions.

17. Upon information and belief, Propack Data GmbH, later called "Rockwell Automation Solution GmbH," was a subsidiary of Rockwell Automation.

18. On June 3, 2006, Rockwell filed a provisional patent application with the United States Patent and Trademark Office ("USPTO") naming Schunck and Schnaebele as joint inventors (the "Provisional Application").

19. Upon information and belief, the invention described in the Provisional Application (hereinafter "the Invention") was embodied in the version of the VersionWorks product that was placed on sale and sold in 2005, prior to the sale of GEPA to Propack.

20. The Invention was conceived and reduced to practice no later than approximately the summer of 2005, prior to the sale of GEPA to Propack.

21. Upon information and belief, under the version of the German Employee Inventions Act in force through September 30, 2009 (and therefore at the time of execution of both of the relevant employment agreements), an employee retained the rights to the employee's invention. An employer could obtain ownership of an invention only if within a period of four months of notification of the existence of the invention, the employer both served the employee with a written declaration claiming the right to the invention for itself and paid the employee a required fee beyond the employee's regular compensation.

22. Although the German Employee Inventions Act requires that the employer be notified of the invention, the German Supreme Court has held this requirement is waived when the employer has knowledge of the invention and the opportunity to understand the invention.

4

23. GEPA was aware of the Invention no later than the summer of 2005, at least because Mr. Schunck, GEPA's president and owner, knew of the Invention and was a co-inventor.

24. Under the German Employee Inventions Act, the deadline for GEPA to provide a written declaration that it wished to claim the Invention expired in 2005.

25. GEPA did not provide Schnaebele a written declaration that it wished to claim the Invention in 2005 or at any other time.

26. GEPA did not pay the fee required by the German Employee Inventions Act in 2005 or any other time.

27. No later than 2005, Schnaebele irrevocably owned at least an undivided joint interest with a co-inventor in the Invention by virtue of GEPA's failure to provide the written declaration required under The German Employee Inventions Act and to pay the required fee.

28. After the sale of GEPA to a subsidiary of Rockwell, Rockwell was aware of the Invention at the latest by the date it prepared and filed the provisional patent application Serial No. 60/803,853 on June 3, 2006.

29. Rockwell did not provide a written declaration on or before October 3, 2006 that it wished to claim the right to the Invention for itself as required under the German Employee Inventions Act.

30. Rockwell did not pay the fee required by the German Employee Inventions Act by October 3, 2006 or any time thereafter.

31. Accordingly, even if GEPA were not charged with knowledge of the Invention in 2005, no later than October 3, 2006, Schnaebele irrevocably owned at least an undivided joint

5

interest in the Invention by virtue of Rockwell's failure to provide the written declaration required under the German Employee Inventions Act and to pay the required fee.

32. Schnaebele resigned from GEPA/Propack on or about May 31, 2007.

33. At no time did Schnaebele execute an assignment of his rights to the Invention to anyone before his January 15, 2014 assignment to Auvesy (see paragraph 57 below).

34. On or about May 17, 2007, Rockwell filed utility patent Application No. 11/750,167, which claimed the Invention (the "'167 application").

35. On or about June 7, 2007, the USPTO issued a notice that required the submission of an oath or declaration of the inventors.

36. Rockwell did not submit such an oath or declaration. Rather, on or about January 7, 2008, Rockwell filed a Petition under 37 C.F.R. 1.47(b) ("First Petition") to proceed with the patent application, stating: "[I]nventors 'Werner Schnaebele' and 'Gunter Friedrick Schunck' are refusing to sign formal documents after diligent effort." On January 22, 2008, the USPTO dismissed that petition.

37. On or about March 24, 2008, Rockwell filed a Request for Reconsideration of Petition under 37 C.F.R. § 1.47(b) ("Second Petition"). On or about May 9, 2009, the USPTO dismissed that petition.

38. On or about August 11, 2008, Rockwell filed a third Request for Reconsideration ("Third Petition"). The Request alleged that Schunck and Schnaebele were both obligated by their employment agreements to assign their rights to the Invention. On August 29, 2008, the USPTO denied that petition.

39. On October 6, 2008, Rockwell filed a fourth Request for Reconsideration ("Fourth Request") and asked for a telephone conference with the Patent Examiner. On

information and belief, Rockwell subsequently had a conference with the Patent Examiner, which was not transcribed. On October 15, 2008, the USPTO stated that Rockwell had a "sufficient proprietary interest" to proceed in the application.

40. About two years later, on or about August 11, 2011, the USPTO informed Rockwell that a patent would be allowed to issue from the '167 application. On October 11, 2011, Rockwell asserted actual ownership of the Invention claimed in and the patent that would issue from the '167 application by identifying Rockwell Automation Technologies as the assignee in its filing with the USPTO.

41. At the time Rockwell made the statement claiming Rockwell Automation Technologies was the assignee of the rights to the Invention claimed in the '167 application, Rockwell knew or should have known that the statement was false.

42. On November 22, 2011, the USPTO issued U.S. Patent No. 8,065,666 from the '167 application, with Rockwell Automation Technologies listed as the assignee.

43. On or about October 17, 2011, Rockwell filed an application for patent as a continuation of the '167 application. The USPTO assigned that continuation application serial no. 13/274,989 (the "'989 continuation application").

44. On October 9, 2013, Rockwell asserted actual ownership of the invention claimed in and the '989 continuation application by identifying Rockwell Automation Technologies as the assignee in its filing with the USPTO.

45. At the time Rockwell made the statement claiming Rockwell Automation Technologies was the assignee of the rights to the Invention claimed in the '989 continuation application, Rockwell knew or should have known that the statement was false.

46. On November 12, 2013, the USPTO issued United States Patent No. 8,584,096 from the '989 continuation application, with Rockwell Automation Technologies listed as the assignee.

47. There is, and since October 11, 2011 has been, a substantial controversy between Schnaebele and Rockwell regarding ownership of the Invention, and the '666 patent.

48. There is, and since October 9, 2013 has been, a substantial controversy between Schnaebele and Rockwell regarding ownership of the Invention, and the '096 patent.

49. The value of the '096 and '666 patents is in excess of $75,000 plus interests and costs.

50. Rockwell was advertising and selling VersionWorks software and, on information and belief, was and is selling its replacement AssetCentre.

51. Plaintiff Auvesy manufactures a product called "versiondog."

52. On or around December 22, 2011, Rockwell sued Auvesy for copyright infringement in Germany on the grounds that Auvesy's software product, versiondog, infringes Rockwell's copyright in VersionWorks.

53. Upon information and belief, Rockwell contends or would contend that VersionWorks and AssetCentre are covered by one or both of the '096 and '666 patents.

54. Auvesy is currently selling versiondog in the United States.

55. Rockwell's prior action against versiondog places Auvesy in apprehension that Rockwell will seek to enforce one or both of the '096 and '666 patents against Auvesy.

56. On January 15, 2014, Schnaebele assigned his entire right title and interest in the Invention and in the '096 and '666 patents to Auvesy.

57. That assignment was filed for recordation with the USPTO.

58. Paragraphs 1-58 of this Complaint are hereinafter referred to the "Factual Allegations" of the Complaint.

### Count I – Declaratory Judgment of Ownership

59. Auvesy restates and realleges the Factual Allegations as if set forth herein.

60. An actual controversy exists regarding the ownership of the '096 and '666 patents, as well as the Invention.

61. Rockwell has falsely claimed that Rockwell Automation Technologies owns the '096 and '666 patents, as well as the Invention.

62. Auvesy is entitled to a declaratory judgment of ownership of at least an undivided interest in the '096 and '666 patents, as well as the Invention.

### Count II – Slander of Title

63. Auvesy restates and realleges the Factual Allegations as if set forth herein.

64. Schnaebele owned at least an undivided joint interest in the Invention under the German Employee Invention Act, which he has assigned to Auvesy.

65. Rockwell wrongly, knowingly, and on information and belief maliciously asserted actual ownership of the '096 and '666 patents by identifying Rockwell Automation Technologies as the assignee in its filings with the USPTO.

66. Rockwell knew, or should have known, that Schnaebele irrevocably owned at least an undivided joint interest in the invention by virtue of GEPA's and Rockwell's failure to provide the written declaration required under the German Employee Inventions Act and failure to pay the required fee.

67. Schnaebele, and his successor in interest Auvesy, have suffered actual damages by Rockwell's actions, and that Auvesy is entitled to punitive damages based on Slander of Title under Wis. Stat. § 706.13.

68. Schnaebele, and his successor in interest Auvesy, have suffered special damages because the claim that Rockwell Automation Technologies is the assignee of rights to the '096 and '666 patents impairs Auvesy's ability to sell any product covered by the patents.

## Count III - Conversion

69. Auvesy restates and realleges the Factual Allegations as if set forth herein.

70. Schnaebele owned at least an undivided joint interest in the '096 and '666 patents, as well as the Invention, under the German Employee Invention Act, which he assigned to Auvesy.

71. Rockwell wrongly asserted actual ownership of the '096 and '666 patents, as well as the Invention, by identifying Rockwell Automation Technologies as the assignee in its filings with the USPTO, taking control of property that belonged to Schnaebele.

72. Rockwell's actions were taken without Schnaebele's consent.

73. As a direct result of Rockwell's assertion of ownership, the USPTO issued both the '096 and '666 patents with Rockwell Automation Technologies named as the assignee.

74. Rockwell's actions resulted in a serious interference with Schnaebele's, and his successor Auvesy's rights to the '096 and '666 patents, as well as the Invention.

75. Rockwell's conversion of Schnaebele's, and his successor Auvesy's, property rights damaged Schnaebele and Auvesy. Schnaebele, and his successor in interest Auvesy is entitled to actual damages for conversion the '096 and '666 patents, as well as Invention.

10

## Count IV - Unjust Enrichment

76. Auvesy restates and realleges the Factual Allegations as if set forth herein.

77. As acknowledged by Rockwell in the filings for '096 and '666 patents, Schnaebele is an inventor of the Invention.

78. Rockwell wrongly asserted actual ownership of the '096 and '666 patents by identifying Rockwell Automation Technologies as the assignee in its filings with the USPTO.

79. As a direct result of Rockwell's assertion of ownership, the USPTO issued both the '096 and '666 patents with Rockwell Automation Technologies named as the assignee.

80. Rockwell knew, or should have known, that Schnaebele irrevocably owned at least an undivided joint interest in the Invention by virtue of GEPA's and Rockwell's failure to provide the written declaration required under the German Employee Inventions Act.

81. Rockwell was advertising and selling VersionWorks and is currently advertising and selling AssetCentre software that, on information and belief, incorporates the Invention and is covered by U.S. Patent No. 8,584,096 and U.S. Patent No. 8,065,666.

82. On information and belief, Rockwell has benefitted from its assertion that VersionWorks and AssetCentre are covered by U.S. Patent No. 8,584,096 and U.S. Patent No. 8,065,666.

83. Rockwell has been and continues to be unjustly enriched at the expense of Schnaebele and Auvesy, and Auvesy is therefore entitled to the unjust gains obtained by Rockwell.

## Count V - Declaratory Judgment of Non-Infringement

84. Auvesy restates and realleges the Factual Allegations as if set forth herein.

85. An actual controversy exists regarding infringement of the '096 and '666 patents.

86. Neither Rockwell Automation nor Rockwell Automation Technologies is the owner of the entire, right, title and interest in the '096 and '666 patents.

87. Auvesy is the owner of at least an undivided interest in the '096 and '666 patents.

88. No product manufactured by Auvesy has, or can in the future, infringe the '096 and '666 patents.

89. Auvesy is entitled to a declaratory judgment that no product manufactured by Auvesy can infringe the '096 and '666 patents.

**WHEREFORE**, Auvesy prays that this Court:

a. Declare that there was never an assignment of the right, title, or interest in the Invention or U.S. Patent Nos. 8,065,666 and U.S. Patent No 8,584,096 from Schnaebele to Rockwell Automation or Rockwell Automation Technologies;

b. Declare that Auvesy is the rightful owner of at least an undivided interest in U.S. Patent Nos. 8,065,666 and U.S. Patent No 8,584,096 and cannot infringe patents it owns;

c. Order that Rockwell Automation and Rockwell Automation Technologies take all actions necessary to correct the record of ownership before the USPTO;

d. Order that Rockwell Automation and Rockwell Automation Technologies pay to Auvesy the value of U.S. Patent Nos. 8,065,666 and U.S. Patent 8,584,096 at the time Rockwell converted them;

e. Order that Rockwell account for and pay to Auvesy all royalties, profits and other gains derived from its exploitation of the Invention and the Patents;

f. Order that Rockwell pay actual damages and punitive damages for falsely asserting actual ownership of U.S. Patent Nos. 8,584,096 and 8,065,666 by identifying itself as

the assignee in its filing with the patent office and for Rockwell's unjust enrichment resulting from these acts.

 g. Order that Rockwell pay interest on such sums as are awarded and costs;

 h. Award punitive damages due to Rockwell's conduct in willfully violating the German Act on Employees' Inventions;

 i. Award its reasonable attorneys' fees and costs; and

 j. Grant such other and further relief as the Court may deem just.

Dated: October 9, 2014    Respectfully Submitted:

        By: /s/ Todd H. Flaming
          One of the Attorneys for
          Plaintiff Auvesy GmbH & Co. KG

          Todd H. Flaming
            Todd@KrausFlaming.com
          Kenneth E. Kraus (*pending admission*)
            Ken@KrausFlaming.com
         **KrausFlaming LLC**
         20 South Clark Street, Suite 2620
         Chicago, Illinois 60603
         (312) 447-7217

         Leslye B. Davidson
           ldavidson@ddkpatent.com
          (*pending admission* pro hac vice)
         Cary S. Kappel
           ckappel@ddkpatent.com
          (*pending admission* pro hac vice)
         **Davidson, Davidson & Kappel, LLC**
         485 Seventh Avenue
         New York, NY 10018
         (212) 736-1940