UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**AUVESY GmbH & Co. KG,**

    Plaintiff,

    -vs-                                    Case No. 14-C-1258

**ROCKWELL AUTOMATION, Inc. and
ROCKWELL TECHNOLOGIES, Inc.,**

    Defendants.

## DECISION AND ORDER

    This action involves a dispute over the ownership of certain patents entitled "Change Management Methodologies for Industrial Automation and Information Systems," U.S. Patent Nos. 8,065,666 and 8,584,096. Auvesy GmbH and Co. KG, a German corporation, seeks a declaration that it is a joint owner of at least an undivided interest in the invention, that neither Rockwell Automation, Inc. nor Rockwell Automation Technologies, Inc., is the owner of the patents, and that no product made by Auvesy infringes or could infringe any claim of the patents. Defendants move for judgment on the pleadings. This motion is denied.

    A motion for judgment on the pleadings, Fed. R. Civ. P. 12(c), is evaluated under the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Such a motion

tests the legal sufficiency of the complaint, not the merits of the lawsuit. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). The Court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Mallett v. Wis. Div. of Vocational Rehab.*, 130 F.3d 1245, 1248 (7th Cir. 1997).

Auvesy's principal, Werner Schnaebele, formerly worked for a German corporation known by the acronym GEPA.[1] Schnaebele, along with GEPA's owner and President, Gunter Schünck, developed an application relating to industrial automation. GEPA was eventually sold to Propack Data GmbH, later called "Rockwell Automation Solution GmbH," a subsidiary of Rockwell Automation.

Schnaebele signed an employment contract with GEPA on or about June 28, 1996. The First Employment Contract had no provision regarding ownership of inventions conceived by an employee. However, because the First Employment Contract was between a German citizen and a German company, the provisions of the German Employee Inventions Act[2] applied

---

[1] Gesellschaft fur Prozessautomation un PC-Anwendungen mbH.

[2] Gesetz über Arbeitnehmererfindungen.

- 2 -

to that contract. Schnaebele signed another employment agreement in 2006, on or about the time that GEPA was acquired by Propack Data. The Second Employment Agreement expressly states that the German Employee Inventions Act governs the ownership of any inventions.

Under the Inventions Act, an employee retains the rights to his invention, but an employer can obtain ownership of an employee's invention if within four months of notification of the existence of the invention, the employer both served the employee with a written declaration claiming the right to the invention for itself and paid the employee a required fee beyond the employee's regular compensation. Although the Inventions Act requires that the employer be notified of the invention, the German Supreme Court has held that this requirement is waived when the employer has knowledge of the invention and the opportunity to understand the invention. Accordingly, Auvesy alleges that Schnaebele retained ownership of his invention because Rockwell did not give notice or pay the required fee within the applicable timeframe.

Rockwell argues that Auvesy's claim for declaratory judgment sounds in contract. This is wrong. Auvesy does not, for example, seek affirmative relief for Rockwell's failure to pay for Schnaebele's invention. Indeed, such a claim would make little sense as it appears that Rockwell

- 3 -

did not have a duty — under contract or under German law — to buy Schnaebele's invention. Instead, Auvesy seeks a declaration that it owns the patents *because* Rockwell didn't pay for the invention. The employment contract is relevant only because it confirms that German law governs the ownership of Schnaebele's inventions. Thus, the Court also disagrees with Rockwell's contention that Wisconsin law determines ownership of the patents. State law, not federal law, typically governs patent ownership, but a contractual agreement to apply foreign law as to ownership is "just as valid as an agreement to apply the law of a particular state. [There is] no conflict between United States patent law and enforcing the intentions of the parties that the contract be interpreted under the laws of a foreign country." *Azakawa v. Link New Technology Int'l, Inc.*, 520 F.3d 1354, 1357-58 (Fed. Cir. 2008) (citing *Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324 (Fed. Cir. 2001)).

Framed as such, Rockwell's motion largely falls apart. First, Rockwell argues that Auvesy's claim for declaratory judgment is barred by Wis. Stat. § 893.43, which provides that breach of contract claims must be brought within six years of accrual. Auvesy's claim is not for breach of contract, and it is not governed by Wisconsin law. Rockwell argues that Auvesy's remaining claims are premised upon Auvesy's alleged ownership

interest in the patents. So they are, and for the reasons already stated, Auvesy states an actionable claim to ownership.

Rockwell also argues that Auvesy's conversion and unjust enrichment claims are time-barred because the applicable limitations period began running when Rockwell filed a provisional patent application on June 3, 2006. However, the provisional application named Schnaebele and Schünck as joint inventors. Later, in connection with a utility patent application, Rockwell filed a petition stating that Schnaebele and Schünck refused to assign the invention. Complaint, ¶ 36. Rockwell's ongoing interaction with the PTO makes clear that Rockwell did not assert actual ownership until October 11, 2011. *Id.*, ¶ 40. Therefore, these claims are not time-barred.

Finally, Rockwell argues that there is no case or controversy over Auvesy's claim for non-infringement. The Court disagrees for a variety of reasons, including, as noted, Rockwell's assertion of ownership. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) ("the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment").

- 5 -

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Rockwell's motion for judgment on the pleadings [ECF No. 13] is **DENIED**;

2. Pursuant to Federal Rule of Civil Procedure 16(b), a telephonic scheduling conference is scheduled for **August 11, 2015** at **9:30 a.m.** (Central Time). Please be available at that time. The Court will initiate the call.

3. The purpose of the conference call is to establish a scheduling order which will limit the time: (a) to join other parties and to amend the pleadings; (b) to file motions; (c) to complete discovery;

4. The scheduling order may also: (a) modify the timing for disclosure under Rules 26(a) and 26(e)(1) and of the extent of discovery to be permitted; (b) provide for the disclosure or discovery of electronically stored information; (c) include any agreements the parties reach for asserting claims of privilege or protection as trial preparation material after information is produced; (d) the date or dates for conferences before trial, a final pretrial conference, and trial; and (e) any other matters appropriate in the circumstances of the case;

5. The time limitations set forth in the scheduling order may

only be modified for good cause and with the Court's consent. Fed. R. Civ. P. 16(b)(4);

6. The parties should be prepared to discuss the matters listed in Civil Local Rule 16(a)(1). Please refer to Attachment A. Special attention should also be given to Rule 26(f)(1), which requires the parties to conduct a settlement/discovery conference at least twenty-one (21) days prior to the initial scheduling conference described above. The Rule 26(f) conference may be conducted by telephone. Rules 26(f)(2) and (3) mandate that the parties, within fourteen (14) days of their conference: (a) file a written report outlining the proposed discovery plan they have developed at their Rule 26(f) conference; and (b) make the required initial disclosures under Rule 26(a) regarding witnesses and documents. In addition to the matters specified in Rules 26(f)(2) and (3), the Court requests that the proposed discovery plan submitted by the parties include one or two sentences stating the nature of the case;

7. The written report must include the telephone numbers where the parties can be reached for this call;

8. In addition, Judge Randa is participating in the Seventh Circuit Electronic Discovery Pilot Program and has adopted the <u>Principles Relating to the Discovery of Electronically Stored Information</u>. Counsel

- 7 -

Case 2:14-cv-01258-RTR    Filed 06/30/15    Page 7 of 8    Document 24

should be fully prepared to discuss methods and techniques to accomplish cooperative fact-finding in their case at the initial status conference. Before the initial status conference, counsel must also meet and discuss the Principles Relating to the Discovery of Electronically Stored Information. At the initial status conference, counsel must be prepared to discuss what agreements they have reached regarding discovery of Electronically Stored Information ("ESI") and what area of disagreement they have with regard to discovery of ESI. After discussing the matter with counsel, the Court will determine whether to enter the <u>Standing Order Relating to the Discovery of Electronically Stored Information</u> in their particular case. (Please refer to Attachments B & C).

Dated at Milwaukee, Wisconsin, this 30th day of June, 2015.

**BY THE COURT:**

*[signature: Rudolph T. Randa]*

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**